J-S63001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.L.H., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: R.H., FATHER, | |
| Appellant | No. 878 MDA 2014 |

Appeal from the Order Entered May 12, 2014
In the Court of Common Pleas of Berks County
Orphans' Court at No(s): 83599

BEFORE:  BOWES, PANELLA, and PLATT,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 10, 2014**

R.H. ("Father") appeals from the order entered on May 12, 2014, wherein the orphans' court  involuntarily terminated his parental rights to A.L.H., his now-two-year-old child.[1]  Father's counsel, Gregory S. Ghen, Esquire, has moved to withdraw from representation pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We grant counsel's petition and affirm.

Father has been incarcerated since December 19, 2012, approximately two and one-half months after A.L.H. was born.  N.T., 5/12/14, at 7.  His imprisonment stems from a drug distribution enterprise that he operated

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  On May 12, 2014, A.R.H. ("Mother") relinquished her parental rights to A.L.H.

from the home he shared with A.R.H. ("Mother") and then-newborn A.L.H. *Id*. at 10. His last contact with A.L.H. occurred during June of 2013, when Mother transported the child to a visitation at the Berks County Prison. *Id*. at 7. Father has an extensive criminal history consisting mostly of drug offenses, domestic violence, and property theft. *Id*. at 8-9. Since 1994, he has been incarcerated intermittently for nearly five and one-half years. *Id*. at 8. Indeed, Father was incarcerated at the Quehanna Boot Camp during the termination proceedings, and the earliest that he could expect to be transferred from that program to a rehabilitation facility was June of 2014. *Id*. at 14-16, 33-34. Assuming everything goes as he intends, Father will remain at the rehabilitation facility for two months before being assigned to a halfway house for six additional months. *Id*. at 34. Thus, the earliest possible point that the Department of Corrections could release Father from custody would be February 2015.

Likewise, Father has had extensive interactions with the child service agencies in Lackawanna, Berks, and Lebanon counties, which all have intervened on behalf of one or more of Father's six other children who are not involved in this appeal. *Id*. at 7-8. Father's interactions with his other children are minimal. *Id*. at 7. The oldest children were raised by their respective mothers. *Id*. Another daughter, now an adult, was placed with a paternal aunt in Puerto Rico. *Id*. Furthermore, the two children who immediately preceded A.L.H. in birth were placed in an agency's custody as

infants, and Father's parental rights were involuntarily terminated as to each of them during 2005 and 2006 respectively. *Id*. at 7, 28-29.

Berks County Children and Youth Services ("CYS") became involved with A.L.H. in June of 2013 when Mother consented to A.L.H.'s placement so that Mother could participate in drug rehabilitation. *Id*. at 35. After Mother failed to make any progress at rehabilitation, the juvenile court adjudicated A.L.H. dependent on September 25, 2013. *Id*. A.L.H. has resided with the same pre-adoptive foster family since her initial placement during June of 2013. *Id*. She is thriving in that setting. *Id*. at 35-36.

A.L.H.'s initial permanency goal was reunification with Mother. As Father was incarcerated during the relevant period, the juvenile court directed that upon release from custody, Father complete parenting education, undergo mental health and substance abuse evaluations, comply with treatment recommendations, submit to random urine screens, establish and maintain stable housing and income, cooperate with CYS and attend visitations with A.L.H. *Id*. at 13. CYS encouraged Father to participate in any services offered by the prison. *Id*. at 12. Likewise, it suggested that, in the absence of visitation with A.L.H., Father should send her cards, letters, and audiotapes regularly and give her gifts on special occasions. *Id*. at 12. Father started domestic violence classes while incarcerated, albeit after the

filing of the petition to terminate his parental rights.[2] *Id*. at 13. However, by the date of the evidentiary hearing, Father had not attained a certificate of completion. *Id*. at 15-16. Additionally, Father firmly rejected CYS's invitation to correspond with A.L.H. while incarcerated. *Id*. at 12.

On March 28, 2014, CYS filed a petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1),(2),(5), and (8) and (b). Attorney Ghen was appointed to represent Father during the termination proceedings. Following an evidentiary hearing on May 12, 2014, the orphans' court terminated Father's parental rights. This timely appeal followed. Father filed a Rule 1925(b) statement asserting two generic issues:

> 1. The Honorable Court erred by terminating Appellants' parental rights.
>
> 2. The evidence presented by Petitioners was insufficient to support the Honorable Court's decision to terminate Appellant's parental rights.

Father's Rule 1925(b) Statement, 5/21/14, at 1. The orphans' court entered a Rule 1925(a) opinion.[3]

_____

[2] The CYS caseworker, Marsha Ganter, testified that Father also began parenting classes while incarcerated, but Father's prison counselor informed the orphans' court that parenting programs were not offered at that facility.

[3] The orphans' court found that since Father's Rule 1925(b) statement was impermissibly vague, his assertions were waived. However, in an abundance of caution, the orphans' court explained its substantive reasons for terminating parental rights pursuant to § 2511(a). While the orphans'
*(Footnote Continued Next Page)*

As noted, Attorney Ghen filed with this Court an **Anders** brief and a petition to withdraw as counsel. As we explained in **In re J.T.**, 983 A.2d 771 (Pa.Super. 2009), "the **Anders** procedure has been engrafted onto parental termination cases by **In re V.E. and J.E.**, 417 Pa.Super. 68, 611 A.2d 1267, 1275 (1992)." In order to properly withdraw pursuant to **Anders**,

> counsel must petition the court for leave to withdraw and state that after making a conscientious examination of the record, he has determined that the appeal is frivolous; [next], he must file a brief referring to any issues in the record of arguable merit; [thereafter], he must furnish a copy of the brief to the defendant and advise him of his right to retain new counsel or to himself raise any additional points he deems worthy of the Superior Court's attention.

**Santiago**, **supra** at 351.

Furthermore, in **Santiago**, our Supreme Court outlined the following specific requirements for an **Anders** brief:

> Accordingly, we hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth

(Footnote Continued) ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

court declined to include a parallel § 2511(b) discussion regarding A.L.H.'s needs and welfare, it proffered the requisite analysis on the record during the evidentiary hearing and concluded that a parent-child bond did not exist. **See** N.T., 5/12/14, at 38. Accordingly, we need not remand this matter for the orphans' court's preparation of a supplemental opinion addressing that aspect of it decision. **Compare In re I.G.**, 939 A.2d 950 (Pa.Super. 2007) (where trial court failed to address effect of severing parent-child bond that is apparent from record, the case should be remanded for appropriate needs-and-welfare analysis).

counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id*. at 361. Once counsel satisfies the procedural mandates and submits a brief articulating the basis for his conclusion that the appeal is frivolous, we must conduct a full examination of the record in order to decide whether the appeal is, in fact, wholly frivolous. *Id*. at 354.

Herein, Attorney Ghen's petition to withdraw from representation averred that he made a thorough review of the record and believed this appeal to be wholly frivolous. In addition, Attorney Ghen filed with this Court an *Anders/Santiago* brief and mailed a letter to Father wherein he informed Father of his request to withdraw, enclosed a copy of the *Anders/Santiago* brief, and advised Father that he had the right to hire another attorney or file his own brief and bring to this Court's attention any issues that he wished. Thus, we find Attorney Ghen complied with the procedural mandates of *Anders*.

In addition, we have examined counsel's brief and find it compliant with *Santiago*. The brief sets forth a factual and procedural summary with citations to the certified record. Additionally, having found no issues that would arguably support the appeal, Attorney Ghen presented his reasons for concluding that the appeal is frivolous. The brief identifies the relevant facts and controlling legal authority that formed his conclusion. Since

Attorney Ghen has complied with the dictates of **Anders** and **Santiago**, we next carry out our mandate to perform a full, independent examination of all the involuntary termination proceedings to decide whether the appeal is wholly frivolous.

We apply the following standard of review of an order terminating parental rights:

> In cases concerning the involuntary termination of parental rights, our review is limited to a determination of whether the decree of the termination court is supported by competent evidence. **Adoption of B.D.S.,** 494 Pa. 171, 431 A.2d 203, 207 (1981). The party petitioning for termination "must prove the statutory criteria for that termination by at least clear and convincing evidence." **In re T.R.,** 502 Pa. 165, 465 A.2d 642, 644 (1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." **Matter of Sylvester**, 521 Pa. 300, 555 A.2d 1202, 1203–04 (1989).

**In re Adoption of L.J.B.**, 18 A.3d 1098, 1107 (Pa. 2011). As the ultimate trier of fact, the trial court is empowered to make all determinations of credibility, resolve conflicts in the evidence, and believe all, part, or none of the evidence presented. **In re A.S.**, 11 A.3d 473, 477 (Pa.Super. 2010). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." **Id**.

Requests to involuntarily terminate a biological parent's parental rights are governed by 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)   The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5)   The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8)   The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the

developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The test for terminating parental rights consists of two parts. In *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007), we explained:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

We need only agree with the orphans' court's decision as to one subsection of 23 Pa.C.S. § 2511(a) and the subsection (b) analysis in order to affirm the termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Herein, the certified record supports the orphans' court's determination that CYS established the statutory grounds to terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b). Hence, we do not address the remaining statutory grounds.

The pertinent inquiry for our review follows:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. . . . Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

*In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super. 1999) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)) (internal citations omitted). Although it is the six months immediately preceding the filing of the petition that is the most critical to the analysis, the orphans' court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. *In re B.,N.M.*, 856 A.2d 847 (Pa.Super. 2004). Additionally, to the extent that the orphans' court based its decision to terminate parental rights pursuant to subsection (a)(1), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."

In *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003), we explained, "A parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in

resisting obstacles placed in the path of maintaining the parent-child relationship." As it relates to incarcerated parents, our Supreme Court reiterated in *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012), that the primary focus of the § 2511(a)(1) analysis is whether an incarcerated parent exercised reasonable firmness in declining to yield to obstacles created by imprisonment and employed available resources to maintain a relationship with his or her child. The High Court explained, "pursuant to the abandonment analysis [an incarcerated parent has] a duty to utilize available resources to continue a relationship with his or her child." *Id*. Instantly, the certified record reveals that Father failed to exercise reasonable firmness in attempting to overcome the obstacles presented by his incarceration.

During the evidentiary hearing, Marsha Ganter, the CYS caseworker assigned to the family since October 2013, testified that she did not perceive any detriment to A.L.H. in terminating Father's parental rights, and she reasserted CYS's recommendation in support of terminating Father's parental rights to A.L.H. so that the child can be adopted by her current foster family. N.T., 5/12/14, at 11, 15. She stated that Father has not had contact with his daughter since she entered placement and that the last interaction reported to the agency occurred at the prison during June of 2013. *Id*. at 8-7. She continued that Father had sporadic contact with his then-two-and-one-half-month-old daughter prior to his December 2012

- 11 -

incarceration. Ms. Ganter testified that, while Father requested the agency to provide him photographs of his daughter, he failed to send his daughter any correspondence, audiotapes, or gifts. *Id*. at 11, 12.

Likewise, Father ignored the agency's directions to participate in any available services while he was imprisoned. *Id*. at 12. She explained that although Father recently entered a domestic violence group as part of prison boot camp, there is no certification that the last-ditch effort was completed. *Id*. at 13, 15. Significantly, after enrolling in the program, Father denied that he had a history of domestic violence or that the courts terminated his parental rights to at least two other children. *Id*. at 13. Father questioned why the agency required him to complete domestic violence services. *Id*. Moreover, even though Father's drug use was the principal reason for his extended incarcerations, Father failed to address this vital component of his parenting. Ms. Ganter explained, "in terms of his history and the substances that were his drugs of choice, specifically heroin and cocaine, he has a long road before him before he would really be able to be considered a long-term [option as] caretaker." *Id*. at 14. She opined, "There is a lot of progress for him to make." *Id*.

Finally, Father failed to fashion any long-term plans to reunify with A.L.H. *Id*. at 14. At most, Father requested that CYS relinquish custody of A.L.H. to her adult half-sister, whom Father had previously dispatched to

Puerto Rico to reside with relatives. *Id*. at 7, 14-15. Father's plan, however, did not articulate any role for himself in raising A.L.H. *Id*. at 15.

Ms. Ganter's testimony provided clear and convincing evidence that Father failed to cultivate a relationship with his daughter despite the obstacles of incarceration. Throughout this case, including the six months that are most critical to the §2511(a)(1) analysis, Father was content to delegate his parental responsibilities to others while he remained incarcerated. Despite CYS's encouragement to avail himself of all of the services and opportunities that he was provided in prison, Father failed to contact his daughter and waited until after the termination proceedings to initiate any prison programs. Not only is Father's last-ditch effort to address domestic violence ineffectual pursuant to § 2511(b), but in light of the fact that Father challenged the factual predicate that made the program necessary, it is obvious that Father's participation was ineffective. Thus, the record sustains the orphans' court's conclusion that CYS proved by clear and convincing evidence the statutory grounds to terminate Father's parental rights pursuant to § 2511(a)(1). Stated simply, Father failed to exercise reasonable firmness to overcome the obstacles presented by incarceration in attempting to establish a relationship with A.L.H.

Having concluded that the orphans' court did not err in finding that CYS satisfied its burden pursuant to 23 Pa.C.S. § 2511(a)(1), we next review the orphans' court's needs and welfare analysis under § 2511(b).

While the Adoption Act does not mandate that the orphans' court consider the effect of permanently severing parental bonds, our case law requires it where a bond exists to some extent. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993).

The extent of the orphans' court's bond-effect analysis depends upon the circumstances of a particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa.Super. 2008). We have emphasized that while a parent's emotional bond with his child is a major aspect of the § 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the orphans' court when determining what is in the best interest of the child. *In re K.K.R.-S.*, 958 A.2d 529, 535-536 (Pa.Super. 2008). Indeed, the mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa.Super. 2008) (trial court's decision to terminate parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child).

As we explained in *In re K.Z.S.*, *supra* at 763 (emphasis omitted),

> In addition to a bond examination, the court may equally emphasize the safety needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs. The trial court should also examine the intangibles such as the love, comfort, security and stability the child might have with the foster parent. Another consideration is the importance of continuity of relationships to the child and whether the parent child bond, if it exists, can be severed without detrimental

effects on the child. All of these factors can contribute to the inquiry about the needs and welfare of the child.

*See also In re A.S.*, *supra* at 483 (orphans' court can emphasize safety needs, consider intangibles, such as love, comfort, security, and stability child might have with the foster parent, and importance of continuity of existing relationships).

Herein, the orphans' court concluded that terminating Father's parental rights and freeing A.L.H. for adoption was in the child's best interest. The orphans' court proffered the following needs and welfare analysis.

> Going back, [A.L.H.] began living with her [pre-adoptive] family, which is now a long-term resource, in June of 2013. She had contact with her father once at Berks County Prison[.] Since she was two and a half . . . months old, she has had no direct contact with [Father]. The long-term resource that she is in [permits her to thrive], and she will have the ability, with that resource, to maintain contact with several of her half siblings on her mother's side. The Court finds that there is absolutely no detriment in the termination of father's rights . . . [.]

N.T., 5/12/14, at 37-38. Later, the orphans' court concluded,

> The Court has carefully considered the needs of [A.L.H.] and the welfare of [A.L.H.], that she's now in a loving, comfortable, and secure family and has bonded well with this family. [Father] has done nothing to maintain any type of a parent/child relationship with his daughter. So based on those reasons, the Court will terminate his [parental] rights.

*Id*. at 38-39.

The record supports the orphans' court's determination. Ms. Ganter testified that A.L.H does not have any relationship with Father. N.T.

- 15 -

5/12/15, 11.  In fact, she does not know him.  *Id*. at 12.  Likewise, Father has done nothing to build or maintain any parent-child bond.  While he requested a photograph of his daughter, there has been no contact since June of 2013 and no direct physical interaction since December of 2012.  *Id*. at 7, 10, 11-12.  Father failed to send his daughter letters, cards, or gifts. *Id*. at 12.  Moreover, as previously noted, Ms. Ganter highlighted Father did not envision a role for himself in his proposed long-term plan for A.L.H.  *Id*. at 14. Instead, he would send his daughter to Puerto Rico to live with her adult half-sibling.  *Id*.

In contrast to Father's inaction and failure to fashion a parent-child bond with his daughter, A.L.H. is flourishing in the care of pre-adoptive foster parents.  *Id*. at 11.  The foster parents satisfy all of A.L.H.'s needs. *Id*.  Ms. Ganter characterized A.L.H.'s development in the foster family as "thriving," noted that the family is stable, and opined that her long-term prognosis with the family is positive.  *Id*.  Additionally, the foster parents permit A.L.H. to maintain contact with some of her maternal half-siblings. *Id*.

Accordingly, in light of the evidence demonstrating the absence of a parent-child bond between A.L.H. and Father, and the favorable relationship that A.L.H. shares with her pre-adoptive foster parents, our independent review of the certified record supports the orphans' court's determination that terminating Father's parental rights best satisfied A.L.H.'s

developmental, physical, and emotional needs and welfare. Thus, we conclude that this appeal is wholly frivolous.

For all of the foregoing reasons, we affirm the orphans' court order terminating Father's parental rights to A.L.H. pursuant to § 2511(a) and (b). Gregory S. Ghen's petition to withdraw from representation is granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/10/2014